Good morning, Your Honors. May it please the Court, Joseph L. Steinfeld, Jr. appearing on behalf of the appellants of A.S.K. Financial Assignee and Rosendo Gonzales, Chapter 7 Trustee for Deborah Rayfin. Your Honors, this case involves the interplay of Federal Rule of Civil Procedure 9a and Federal Rule of Civil Procedure 17a and b. And in this case, the courts below reached an interpretation of these rules that has never been recognized by any court in this country, and it's contrary to the purpose of the rule itself. In fact, there are two cases on point in this circuit, the DiCiraccio and the Crusader case that we request the Court to take notice on, that specifically find that an allegation that the plaintiff lacked authority to sue is subsumed in Federal Rule of Civil Procedure 9a. Now, if I can give you a little bit of background on the case, it had a little bit of a tortured history, not too bad, though. The action arises out of a complaint filed by Deborah Rayfin as a co-trustee of the Viner Family Trust, that's her family trust, against an individual, Perry Leff, seeking a return of the usurious interest charged to the trust. It was a loan against the family home. And Deborah Rayfin, as the trustee of the trust, she had filed bankruptcy, so she filed it in her bankruptcy. Because of the community property, under the 541 of the Bankruptcy Code, the trust itself and the principle of the trust was community property. She filed it representing the trust in her representative capacity. But she made one error. She captioned the case incorrectly. She captioned the case as the Viner Family Trust versus Mr. Leff. Now, it's well-settled law. Well, counsel, you say that's the error. The trust agreement provided that there could be no action brought by the trust without the consent of both beneficiaries. So what is, other than dissolving the trust, as was suggested during these proceedings, how could Ms. Rayfin bring the action without the consent of her ex-husband? Well, that's the issue here. She lacked the allegation and she lacked the authority to do so. Well, there isn't any question about that, is there? Right. Well, I'll answer the question directly. Had this been brought up as an affirmative defense, which it should have been under Rule 9A, because that's the issue, all the cases involving lack of authority and capacity involve some defect to the plaintiff. But the fact of the matter is she could not bring the action without the consent of her ex-husband. Because she lacked the authority, except for the fact there were certain circumstances she could have. For example, if he consented, and in this case, let me finish. In this case, there was no evidence. She did not know that he did not consent. For example, there was a settlement of their community property. She believed that that settlement covered this trust property and that he waived any rights to object to the bringing of this action. There was also a sale of this. She just didn't have any evidence that he objected. You're saying that's why she knows he didn't consent? Well, it would be a form of gratification. In other words, that because he was well aware of the fact this action was brought and never once said to her that, you know, he objected to it. And, in fact, at the deposition that we took of him, he never once said in the deposition that he objected to the filing of this lawsuit. And that's one of the points we want to make here, Your Honors, is that this is a simple case, even assuming arguendo, that she didn't have the consent. All that means is that that's an affirmative allegation that the defense has to raise. And they had every ability to raise this affirmative allegation. And I'll tell you why. Because they spoke to Mr. Viner before filing their answer. It's in the record. There are two affirmative defenses, they plead, where he affirms, they use the word affirm, and it's in the appendix, I think, at 41. And he says, I affirm, Mr. Viner, her ex-husband, affirms that he did not believe this loan to be usurious. Now, if he's going to affirm, how would Mr. Leff know that Mr. Viner didn't think that it was usurious and affirm it? But isn't it a question of fact? Did he consent or did he not? Well, that is a question of fact, which, frankly, we didn't have an opportunity to test. Well, you've never taken the position that he did consent. It is our position that he ratified. We took that position to the judge below. Maybe I didn't see that. It's in the oral article. This is the gravamen of our problem, Your Honors, is that under the rules, we should have not been sandbagged with this defense. In other words, we filed this complaint, and they never take exception for six months from the time, seven months, actually, because the complaint was filed, the answer was filed. The complaint was filed, I believe, in February. The answer was filed in May. In that answer, nine enumerated defenses. Let me finish. I'll be happy to answer your question. Okay. They didn't plead it. So we don't know. She believes that, number one, her filing of bankruptcy took control of the trust. She believes that the settlement that she reached with her husband allowed her to file this, and she believes that ultimately the sale of this action to us allowed it. But that doesn't matter because every case says that if you're going to challenge whether it's the capacity or authority to sue in a representative capacity, which is what's happening here, she is suing in a representative capacity. There's no doubt about that. She's saying, I am the trustee, and I am suing Mr. Leff to recover trust property, usurious interest. And they say, well, you're not authorized to do it. Well, fine. All we had to do was say she wasn't authorized. Federal Rule Procedure 9A says it's not our requirement. If you thought that he was not objecting to the sale or was consenting or had ratified it, how would they know that he hadn't consented? Because they could have asked him. In other words, it was their burden to ask him. And as I said, Your Honor, that in their answer they admit that they spoke to him. And then we had a deposition in June, June 30th of 2005, when Mr. Leff was present, his attorneys, we had a deposition of Mr. Viner. He never once said, you know, he claimed that the loan wasn't usurious. There were other facts that are not before the court. But he never once said, oh, by the way, I object to the bringing of this lawsuit. So to us, how would we know that he hadn't consented? I mean, it seems to me that would be the first thing out of his mouth. And guess what? Opposing counsel never asked him because I think they wanted to sandbag us. Because they didn't, you know, they could have easily asked him. They had a copy of the Viner Trust. They could have read the trust. They could have decided that. It was our position that that was a non-issue. All of a sudden, seven months after the filing of the answer, six months after the filing of the answer, and after the time to amend your pleadings is over, in their summary judgment motion, for two pages they raise an issue of standing. They don't even call it lack of authority as a caption. They say that because Ms. Rafen lacked the authority, she lacked standing to sue. Well, that isn't the case. And we, of course, took the position that it wasn't the case. The bankruptcy judge then says, oh, no. And, by the way, he doesn't take the position about whether they consented or not. His whole issue before the court below is that it was part of our case in chief, that we had to allege that she had authority. Well, if you read Federal Rule 9a, it says the opposite. It says you don't have to allege authority to sue in a representative capacity. So you know how he got away from that? He says, well, it's the Viner Trust, and the Viner Trust is not authorized to sue. Therefore, it's not covered by Federal Rule 9a. Well, that is absurd because, first of all, everyone knows that the trust now shouldn't have been brought. The caption really is Deborah Rafen as trustee. That's the real party of interest. Counsel, Leff files his motion for summary judgment on November 9th of 2005. The district court grants the motion in December of 2005, and you asked for reconsideration. Did you respond to his motion for summary judgment? Yes, we did. Did you raise the 9a question in your response to his motion for summary judgment? No, we did not because we read it as an issue of standing. In other words, we misread his argument, and we went to the judge. And the judge also said this is not a matter of standing. This is a matter of authority to sue. At that point, as soon as that hearing was over, we pulled out his answer and noticed that he hadn't pled it. And then we made a motion to reconsider, in effect, for new trial or judgment notwithstanding the verdict, timely made before the entry of the judgment. The court below did not deny that motion on the basis that we could have or should have raised it as the opposition. Instead, the judge says, no, I'm going to let you raise it, but I'm going to deny it because I read the Rule 9 is not applicable. And that's what the problem we have here, is we were sandbagged with this lack of authority. We had a good basis for believing that there was not an issue. And yet, on this SJ motion, and then in the SJ motion, the caption says, and I know that my opponent is going to say, well, all you have to do is read after the caption. But why would he caption that there's a lack of standing? Well, standing is whether or not the trust had the rights, you know, whether there was an injury or a harm that could be corrected. And we took the approach that way. At the oral argument, for the first time, it became clear that the judge was honing on this lack of authority. So then we went back and timely filed as an error of law. Now, the case is still active. And if it's a true error of law, which it is a true error of law because there's simply no case law and no law to support. Wright and Miller, everything says that Federal Rule 9A, if you read it, is very simple on its face. The infirmities of a plaintiff to bring an action should be brought out in the beginning of the case. And why is that? Good policy. Because we spent hundreds of hours on this case litigating. Yes, there were just three depositions, but a tremendous amount of paperwork, discovery, and then briefing. The briefs alone were several hundred pages on the summary judgment on the issue of usury and whether it was broker-arranged. It was a very fact-intensive case. And all of a sudden, this issue is brought up after we had the inability at that point to depose Mr. Viner on the issue. The first thing we would have asked Mr. Viner at that deposition had we known that the consent issue was before us, is what did you do at the settlement agreement that you reached with Deborah Viner with regard to the trust property? Why did you not include it? If you didn't agree with this lawsuit, why was that not discussed? There is an issue of ratification, and that was not brought before the bankruptcy judge, because we didn't have the opportunity to conduct discovery on that issue. But laying that aside, it doesn't really matter, to be perfectly frank. Because if you look at every other case, the issue is whether or not they waived it. But we only get to the issue of waiver if we apply the rule correctly. And by applying the rule correctly, we had the right to have that pled as a negative averment. And then the issue is, well, did they waive it? Then that falls into Rule 16, which says, well, they have a right to come in and amend their answer for good cause. And then we can have an evidentiary hearing, which is really what we need in this case, is an evidentiary hearing as to why it is when they were armed with the trust, had talked to Mr. Viner. He was clearly opposed to, at that point in time, by the time they filed the summary judgment, it was obvious he had already gotten his settlement with his ex-wife. So he was free at that point to, quote, not consent to the lawsuit. But the issue was, when the lawsuit was filed, would he have consented to it? Well, at that point in time, they were engaged in a litigation over community property, and it's highly probable that he might have consented to it. But the fact that they didn't raise it and it was a non-issue, you know, caused us undue prejudice. Now, they're going to say, well, you could have always revoked the trust. But, you know, revocation, and we ultimately did, by the way, but that involved, and unfortunately too late because even though we believed the statute of limitations was still okay, a second case was dismissed because we had missed it by a few weeks. We thought it was extended by the bankruptcy code. But the point is, it doesn't matter if you could have possibly resurrected this action. The fact that you lost your ability to prosecute the action itself and you were prejudiced in your whole handling of the case and had to incur legal fees, not to mention their legal fees, which, by the way, they have sued Rayford for and now is a claim in the bankruptcy because under the provisions of the loan agreement, well, California law would allow us to take advantage of it, but clearly it was written that if you sue on this note or if we have to sue to collect this note, you have to pay all legal fees, not a shocking clause that's in a note. So in other words, what happened was we get dismissed, then they file a motion for legal fees for $245,000 against the estate, which the judge then held to be against the trust. So the point I'm getting at is that's the whole idea of Federal Rule 9, is all of this stuff, all of this fighting over whether it was usurious, whether it was a broker-arranged, none of that was necessary. It only had to do in their answer is a vera that they don't believe this suit was brought with the approval of the other trustee. And had they done that, many things could have happened. Maybe we would have revoked the trust very early on and had more opportunity to figure out what was going to happen on the case. Maybe we would have negotiated with Mr. Vayner when he still had an interest in allowing this suit to go forward because, again, there was a major settlement with him. Or maybe ASK wouldn't have purchased the cause of action had it known that that occurred. All of these events could have been precluded. And I do note, I think the panel should note, I'm going to reserve the rest of my time after making this statement unless you've got further questions, that at the deposition of Michael Vayner, which was two and a half months before the close of the discovery in this case, for the opposing counsel not to ask Mr. Vayner whether he consented to this lawsuit and then to make that one of the linchpins of its SJ motion, to me is the height of sandbagging, and not to put it in your affirmative defense. What was the time difference between his deposition and Mrs. Raffin's deposition? It was about two and a half months. But the point is, and by the way... And that was where they asked her about consent. Right. And she didn't say that he didn't consent. All she said was she never spoke to him about the suit.  Which is what they're claiming. And I say that is simply not, doesn't pass the smell test. I mean, how can that possibly be when you have this guy trashing our lawsuit left and right about, he thinks that he met with a broker, although there's evidence that he lied in an earlier deposition that he didn't. But anyway, that was my point, Your Honor. Counsel, if we were to say, okay, look, this is a mess and it looks like we've had mistakes made on both sides, let's resolve this thing on the merits of it rather than trying to figure out whether you've waived it because you didn't raise it until after on a motion for reconsideration. You'll say, well, yeah, but it was a standing argument. Why don't we just treat the November motion for summary judgment as is, in effect, a motion to amend the complaint and move on from there? And if we were to do that, then what is it that you would like the court to do? Well, first of all, if that is a motion to amend the complaint, then it has to come under good cause. And I think that's for the trial court below to decide in effect whether there was good cause. We need an evidentiary hearing to see whether or not, indeed, the first time that they could have and should have raised this issue to amend was at that late date. So you want an evidentiary hearing then to figure out what did Mr. Viener say or not say prior to the filing of the lawsuit? Right. And what did he say during the filing of the lawsuit to Mr. Lapp's attorneys prior to the October deposition? Correct. Because they have to demonstrate good cause under Rule 16. And by the way, Your Honors, we filed a motion to amend to add a trouble damage count around the same time as that S.J. motion was decided, and the judge denied it for lack of good cause. Because, again, he said you should have raised that with him. Judge Zorloff was pretty strict about adhering to his. If we were to find that this thing ought to be treated then simply as a motion to amend to try and move this thing forward, then you still think that we have to remand it for a good cause hearing? Absolutely. Because otherwise we'll – I mean, if you simply say that you find – you can't find good cause because you don't have a record. And we don't have – we weren't able to establish that record because of the way this was set up. And that's the whole purpose of Rule 9 and Rule 17 is to allow us to – and, of course, we would then amend in under 17 and have Rafe, of course, be the party plaintiff. You have less than two minutes. Did you want to reserve it? I will reserve it, Your Honor. Thank you very much. Good morning, Your Honors. Alan Brown representing Perry Leff, the appellee in this case. The fundamental issue here, first of all, is whether or not 9A was implicated by the defenses that were raised in this case and whether or not they are affirmative defenses. And if – and then there's a second issue of even if 9A is implemented, was it inappropriate or was it wrongful to bring or grant a summary judgment in the absence of having had the affirmative defense? Let me, first of all, indicate that the mention was made about why we didn't plead this as an affirmative defense. We didn't have the trust instrument. My client never got the trust instrument. Mr. Brown, is that – I'm sorry. Yes. I just wondered when they lent the money, there was no inspection of the trust agreement? They lent money to the trust? No. And there's nothing in the record that we ever had the trust agreement. Counsel has made a lot of statements about what the evidence was. There's no evidence he cites to in his brief. Everything is, well, maybe we could have done this, maybe we could have done that. If we had known this, those are arguments. There's no evidence in the record that any of those things were done or could do. What's in the record is that we set forth, we requested production of documents in August of that year from the plaintiff. They were due in September, and they asked for an extension until October. And we weren't going to take Ms. Raffin's deposition until we had the trust instrument. And so we didn't get those documents from them until October. After we got the documents and we had the trust instrument in October, we then agreed to take her deposition. We had to continue her deposition, and we had to get a stipulation to extend the discovery time, the discovery date, because they were so late in providing documents to us. And so it never occurred to us that there was an issue involving lack of consent, because she was a beneficiary and trustee, obviously. She initiated the case. She didn't put her name on the caption, but she initiated the case and brought in the plaintiff as the Wiener Family Trust. And as Judge Guilford said in his opinion, it was not clear. It didn't create an issue in our minds, because we were looking at the Wiener Family Trust. The Wiener Family Trust had been the borrower. The Wiener Family Trust had been the entity that put up the house, because the house was in the Wiener Family Trust. The monies were paid, lent to the Wiener Family Trust, so it appeared to us that there was no problem. They initiated that. And so until we got that trust instrument, there was no trigger that gave us the opinion or thought, hey, there's a problem of whether or not there's consent. We had no idea who the trustees were specifically, other than we thought we assumed that she was one, but had no idea that there was another one, and if so, that there was no consent. But let me get to the primary issue, or one of the primary issues. The first issue is whether 9A is implicated. And as the court knows, there are three things that are involved in 9A. One is, is there capacity? And all the judges that have looked at this so far have said, this is not a capacity issue, it's an authority issue. And I agree with that. I think that's the correct interpretation. Have any cases made that distinction, other than Owen's near case? There are cases that talk about concepts of capacity, but usually capacity is discussed in the context of whether or not there is legal authority, legal right to bring it, not as opposed to the authority to bring it. It's hard to imagine the purpose of the rule being different with regard to whether it's authority or capacity. I mean, it seems to me both those things are something you want to get out pretty early. Well, I would agree. I would agree. And there was certainly no telltale sign that capacity was an issue in the case, because the trust was a legal trust to our knowledge. We hadn't seen it, but it was a trust that dealt in property. It was a trust that held the home. It was the trust that signed the agreements to borrow the money. The other issue is whether or not there's legal existence, capacity, legal existence, and authority to sue in a representative capacity. Now, I think it's important here that the appellants have conceded that the trust was not bringing this suit in a representative capacity. And I want to quote from their brief, which was a brief that was in the district court. And this is in the appellant's excerpt of Record Volume 1, and it's page 274. And this is what the appellant says there. The appellant asserts that Raffin did not have authority to act in a representative capacity. However, Raffin was not acting in a representative capacity on behalf of the Wiener Trust. The Wiener Trust was acting for itself, asserting its own usury claim. It is an anathema for the bankruptcy court to assert the Wiener Trust did not possess the authority to bring its own usury claim. The Wiener Trust is a real party and interest because it owned the property, securing the notes and modifications thereto. It was the party that entered into the same, and it is the entity that paid the usurious interest to Leff. So they've taken the position here this was not a representative suit. It doesn't relate to whether there was authority in the representative. And now they're basically saying it is a representative suit. This is in their brief to the district court. And they're saying it's a legal entity that has capacity and brought this correctly. Now, how can they say that to the district court and was one of the bases upon which Judge Guilford ruled, accepting that? Because in his opinion, you recall, he says they have conceded that, and he cites this section in their brief. He cites this section in their brief. And then in this court, Your Honors, in their brief on appeal, they say at page 16, also authority to sue in a representative capacity is not an issue because the Wiener Trust is not asserting rights on behalf of another party in a representative capacity. The Wiener Trust is asserting its own rights. They have admitted and conceded in the district court and in this court that this is not a case involving authority to sue in a representative capacity. And once they do that, we have no duty to prepare an affirmative defense here. There is no duty to prepare an affirmative defense because they have conceded that this particular leg is not appropriate. Now, they deposed Mr. Wiener, and they asked the question, why didn't we ask the question if there was consent? Why would we ask that question? We didn't have the trust instrument at that point in time. It didn't occur to us. They took the same position there as they took in the two portions of their brief I read to you, that the Wiener Family Trust was in fact a valid entity in which to bring a lawsuit. That was the decision. The decision was made by lawyers. They weren't sandbagged in any way. I'm sure they had the trust. They were representing Ms. Rathen. They had read it. We didn't. If they had to know that they needed authority from Mr. Wiener, why didn't they ask Mr. Wiener? They took his deposition. Why didn't they ask Mr. Wiener, hey, you haven't objected. I assume you consent. They didn't ask any questions of Mr. Wiener. They had the trust. They had to know that was an issue. Why didn't they ask? We didn't have the trust. So we had no idea that there was a defect at all. So I think those are very, very telling points here. There's another point, and that is that there is no waiver, there is no waiver, since there was no requirement for us to plead, this is an affirmative defense, there's no waiver of our right to bring a motion for summary judgment. And we're not precluded from bringing a motion for summary judgment. In fact, DiCiraccio, one of the cases they cite in their brief, specifically acknowledges that one may bring a motion for summary judgment even though you have not pleaded the defense affirmatively of no authority in a representative capacity. And the DiCiraccio case says, quote, none of the defendants made a specific negative averment in their answers, moved to amend answers, or filed a motion for summary judgment on that issue. And the DiCiraccio case is different, because they raised the issue of authority in an in limine motion, essentially on the day of trial. And the court said that's too late. But then the court went on to say that they could have raised the issue in a motion for summary judgment and there wouldn't have been a waiver. That's exactly what we did. Well, I don't know if they said that. They said no summary. It hadn't been raised in the pleadings. It hadn't been raised in summary judgment. I suppose there's an implication. Yeah, I can quote it here, Your Honor. They said none of the defendants made a specific negative averment in their answers, moved to amend answers, or filed a motion for summary judgment on that issue, close quote. You can infer from that what you would infer, and I won't editorialize it. That's the language. But the point here is that the late receipt by us of the trust instrument kept us from really knowing what was going on. And it was upon the receipt of that trust instrument, late in the day, after all of these extensions were granted for the production of documents, put us on to the matter, and at that point in time, we then took the deposition of Deborah Raffin and asked all the appropriate questions, which gave us the clue that, in fact, there was a problem there. Remind me when you got the trust instrument. Excuse me? When did you get the trust instrument? It would have been approximately a month, I guess several weeks before. I don't have the exact date. Before her deposition. In October of 2005. Yes, I believe so, Your Honor. And here's the other point that I think is important. Once we raised that issue, at the hearing in December, and we quoted this in our brief, counsel said, in an attempt to get the judge to deny the motion, I'm going to go to my client as community property and she can bring it that way. And so they could have done that. They could have brought an action. They weren't prejudiced. They could have dissolved the trust, had the property and the causes of action come to her and filed the case. They could have done that. They didn't do that. Then the motion for reconsideration was made, and it was heard in January 19th. And again, in trying to get the judge to say, why make me go through this other process, we can do it this way, let's take a shortcut, he said, again, we can dissolve the trust, have the properties come to my client, and then file the lawsuit. In their brief to this court, they say that they could have done that, but they miscalculated the fact that the statute of limitations was not stayed by a particular statute, that they miscalculated that, and in fact, the statute of limitations continued to roll on, and because of that, they were too late in filing it. And there was a motion to dismiss, which we made, and the court granted it. But I can't see that we should be blamed because they miscalculated the fact that there was no stay on the statute of limitations when there was plenty of time to file it. After December 19th, and after either December 15th, and after even January 19th, there were still several weeks that they had to file, but they thought they had two months. That's not something we're accountable for, so I don't think there's any prejudice. If they had acted promptly after the December 15th summary judgment hearing, or even after the January 19th motion for the statute of limitations, they could have filed another complaint and saved it, but they didn't. And while it's regrettable, it's certainly no fault of ours. We didn't put them in that position or create that. We didn't make any representations as to when the statute of limitations would run, if at all. I guess on balance, Your Honors, I would say that I think that the bankruptcy court got it right, Judge Zizzurlo, when he granted the summary judgment and when he denied the motion for reconsideration, and I would say that Judge Guilford also got it right in the court when he affirmed. Are there any other questions? Thank you, Counsel. Thank you. Judge Canby, I'd like to address one issue that you specifically raised, and I believe Mr. Brown didn't represent what the real facts are. And that concerns the original loan documents. Because we didn't have an inventory hearing, we weren't able to bring this up to the court's attention. But in our discovery, we did obtain the original loan documents. And in the borrower's letter written by Mr. Leff's attorney, not Mr. Brown, but the real estate attorney, there is a statement saying, borrower, meaning Mr. Wiener and Ms. Rafen, agrees and shall deliver a duly executed and promptly notarized certificate of trustee and a true and correct copy of the Weiner Family Trust of 1997. It's no doubt in my mind that Leff, through his attorneys and through those documents, had a copy of this trust agreement. Do you have any evidence that they actually complied with that? Well, that's, again, part of the evidentiary record. I would think all we'd have to do is go to Gary Gitlin, who's their attorney, and pull the file and see if it's in there. And I suspect that you'll find that it would be in there. Maybe you wouldn't. That's another evidentiary issue that we need to explore. And I don't agree. By the way, it was interesting, Mr. Brown said, well, we don't know who the trustees were. But in his answer, he says that Mr. Wiener did all the work here. Defendant, this is on Record 75. Defendant admits Michael Wiener executed the original property note in deed of trust, et cetera, made by the defendant to the trustees as trustee. And then they say they aver that as a co-trustee, Michael Wiener, who executed the subject loan advances, has affirmed that the loan advances were all broker-arranged and that there was no intent to enter into usurious loan. It belies credibility to assume that they were in constant contact with Mr. Wiener. And they clearly had, I find it very hard to believe, and that's why I wanted evidentiary hearing, to see where it is that they didn't have this trust instrument. One last point I want to make, Your Honor, in response to our various positions. We originally did take the position that the trust had the authority. Then upon further research, we recognized that trusts don't have legal capacity in this State and under Rule 17. So in our briefs before this Court, we finally realized what the whole story was here. It was, in fact, the suit brought by Ms. Wiener, assuming she became the plaintiff, then she brought it in a representative capacity. There is no doubt that authority to sue is covered by Federal Rule 9. And the only issue is whether this Court should allow us the opportunity, and I submit that you should, to go back and establish the good cause evidentiary hearing that we're entitled to. Because as Your Honor, Judge Bybee said, it is a he said, she said, and both parties certainly sat on their rights, and we should have a fair opportunity. Thank you very much.
judges: Canby, Bybee, Quackenbush